Brenda PICKERN, Plaintiffs,

v.

PIER 1 IMPORTS (U.S.), INC., and
Siegmund Weinstock Family
Trust, Defendants.

No. CIV.S 03–0121 FCD JFM.

United States District Court,
E.D. California.

Sept. 30, 2004.

Scottlynn J. Hubbard, IV, Chico, CA, for Plaintiff.

Roland M. Juarez, Christina A. Samsel, Richard Cortez, Jr., Heather Burror, Chelsea Spuck, Akin Gump Strauss Hauer and Feld, Dallas, TX, Christopher Joseph Manfredi, Winston and Strawn, Los Angeles, CA, for Defendants.

Richard J. Chiurazzi, Sacramento, CA, for Other Party.

## MEMORANDUM AND ORDER

DAMRELL, District Judge.

This matter is before the court on defendants, Pier 1 Imports (U.S.) Inc., and Siegmund Weinstock Family Trust's (collectively "defendants") motion for summary judgment and motion for monetary sanctions under Federal Rules of Civil Procedure 11 and 26, and 28 U.S.C. § 1927. Also before the court is plaintiff's Motion for Summary Adjudication. The court heard oral argument on the aforementioned motions from parties' counsel on July 9, 2004.

## BACKGROUND

Plaintiff is a visually- and mobility-impaired woman who requires use of an electric wheelchair for transportation. (Pl.'s UF in Support of Motion for Summ. Adj. ("Pl.'s UF") ¶ 1–2.) Defendant Sigmund Weinstock Family Trust ("Weinstock Trust") owns, and defendant Pier 1 Imports (U.S.), Inc. ("Pier 1"), operates, the Pier 1 retail store ("the Store") located at 1931 East 20th Street in Chico, California. (Pl.'s UF ¶ 3.) The Store is separated from 20th Street by a long, narrow strip of land, containing a public sidewalk, and a 10–foot wide grassy berm, which lies between the sidewalk and the Store property. (Defs.' Reply to Pl.'s Opp'n to Defs.' UF in Support of Their Mot. for Summ. J. ("Def.s

Reply UF") ¶ 4.) The strip of land, including both the sidewalk and berm, is owned by the City of Chico. (Id.) No access ramp connects the sidewalk to the Store's parking lot.

Plaintiff resides near the Store and, on a number of occasions, has used her electric wheelchair to transport herself from her home to the Store. (Pl.'s UF ¶ 5.) Plaintiff cannot traverse the grassy strip in her wheelchair. Instead, she accesses the Store by proceeding down the sidewalk along 20th Street to one of two main Mall entrances or to one of the several access ramps connecting the sidewalk to the Mall parking lot. Plaintiff alleges that failure to construct a ramp violates the Americans with Disabilities Act and state law.

On or about December of 2002, plaintiff's counsel contacted defendants' counsel and requested that defendants construct an access ramp from the public sidewalk across the berm to connect the sidewalk to the Store parking lot. (Def.'s Reply UF ¶ 6.) In addition, plaintiffs sought removal of boxes which allegedly obstructed plaintiff's access to the restroom at the Store. (Id.) According to defendants' counsel, he expressed his clients' willingness to make "any and all modifications [they were] legally obligated to make," but also stated his clients' position that they were not obligated to build a ramp because they did not own the property. (Defs.' Mem. in Supp. of Mot. for Sanctions ("Mot. for Sanctions") at 3.) Parties' counsel disagree in most other respects regarding the timing, frequency and substance of their informal settlement negotiations. However, this dispute is of little consequence to resolution of the present motions. It is sufficient to note that the discussions did not prove fruitful.

On January 23, 2003, plaintiff filed a complaint alleging claims for violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., California Disabled Persons Act, California Civil Code § 54, et seq., Unruh Civil Rights Act, Cal. Civ.Code § 51 et seq., California Health & Safety Code § 19955, et seq., California Business and Professions Code § 17200, et seq., and common law negligence. In the complaint, plaintiff alleges that defendants violated Title III of the ADA and parallel state law provisions by not constructing an access ramp across the grassy area between the public sidewalk and the Store parking lot. In addition, plaintiff alleges that she was denied access to the Store as a result of numerous barriers inside the Store, including, *inter alia*, doors and stalls in the restroom that are too narrow, absence of grab bars in the restroom, and presence of vending machines which obstruct the path of travel. (Pl.'s Comp. ¶¶ 28–30.)

On February 19, 2004, defendants filed a motion for summary judgment. On April 30, 2004, plaintiff filed a motion for summary adjudication as to the issue of defendants liability for not constructing the access ramp. Hearing on both matters was postponed by the parties in order to accommodate the taking of plaintiff's deposition. On March 15, 2004 defendants filed a motion for sanctions. The court heard oral argument from parties' counsel regarding the motions on July 9, 2004.

## STANDARD OF REVIEW

### I. Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal

purposes of the rule is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If the moving party does not bear the burden of proof at trial, he or she may discharge his burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party meets the requirements of Rule 56 by showing there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. *See T.W. Elec. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The evidence presented by the parties must be admissible. Fed. R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. City of*

*Niagara Falls,* 754 F.2d 49, 57 (2d Cir. 1985); *Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979).

## ANALYSIS

Defendants move for summary judgment as to all federal claims and request that the court decline to exercise jurisdiction over supplemental state claims. Defendants' primary focus is on the allegation that they violated Title III of the ADA by not constructing an access ramp across the grass strip owned by the City of Chico. Defendants contend that summary judgment is appropriate because they have no duty under the ADA to install ramps on land they neither own nor control. Defendants also contend that the remaining allegations in the complaint were either (1) factually baseless, or (2) voluntarily remedied by defendant, and thus moot.

Plaintiff moves for summary adjudication of her claim that defendants violated Title III of the ADA by not constructing an access ramp across the strip of grass separating the Store from the public sidewalk. Plaintiff does not seek summary adjudication as to the remaining allegations in the complaint, but contends that there are triable issues of fact as to those claims preventing their disposition through summary judgment.

### I.   Federal Law Claims

■ The Americans with Disabilities Act (the "ADA") was enacted by Congress in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title III of the ADA prohibits discrimination by private entities against persons with disabilities in places of public accommodation. 42 U.S.C. § 12182(a).[1] Discrimina-

---

1.  Section 12182(a) provides that "[n]o individual shall be discriminated against on the

tion includes "failure to remove architectural barriers ... in existing facilities ... where such removal is readily achievable."[2] 42 U.S.C. § 12182(b)(2)(A)(iv); *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir.2002). To succeed on a claim of discrimination due to an architectural barrier, plaintiff must prove that: (1) the existing facility contains an architectural barrier prohibited by the ADA, and (2) removal of the barrier is readily achievable. *Parr v. L & L Drive-Inn Rest.*, 96 F.Supp.2d 1065, 1085 (D.Haw.2000).

## A. Failure to Build an Access Ramp

Defendants contend that they have no legal obligation to build an access ramp over land which is owned and controlled by the City of Chico.

Title III imposes liability for "a failure to remove architectural barriers ... in existing facilities ... where such removal is readily achievable; ...." 42 U.S.C. § 12182(b)(2)(A)(iv). Facility is defined as including:

"only... the site over which the private entity may exercise control or on which a place of public accommodation or a commercial facility is located. *It does not include, for example, adjacent roads or walks controlled by a public entity that is not subject to this part.* Public entities are subject to the requirements of title II of the Act. The Department's

regulation implementing title II, which will be codified at 28 C.F.R. part 35, addresses the *obligations of public entities to ensure accessibility by providing curb ramps at pedestrian walkways.*"

28 C.F.R. Part 36, App. B at 677 (2003) (emphasis added.)

■ It is undisputed that the strip of grass is owned by the City of Chico, which controlled construction of the public sidewalk.[3] (Def.'s Reply UF ¶ 5.) Defendant does not maintain or manage the strip of grass or the sidewalk, nor could it make repairs or modifications without obtaining permission from the City of Chico.[4] (Decl. Of Tami Kohler ¶¶ 4–5; Declaration of Irvin Weinstock ¶ 5.) Because defendants neither own nor control the strip of grass, it does not fall within Title III's definition of "facility."

Without specifically addressing the aforementioned regulation, plaintiff contends that more general language found in 42 U.S.C. § 12182(a) should control disposition of this issue. (Pl.'s Opposition to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") at 6.) That section provides:

"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation *by any person*

basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. § 12182(a).

2. The ADA imposes more stringent requirements on facilities constructed after its passage on January 26, 1993. The parties agree that the Store is covered under the ADA's requirements for existing facilities.

3. Plaintiff does not dispute that the City of Chico constructed the sidewalk, but contends that "the Improvements Act of 1920 impose [sic] the duty to construct and pay for the public sidewalk on defendant Sigmund Weinstock Family Trust." (Pl.'s Opp'n to Def.'s UF ¶ 5.)

4. While this fact does not appear in Defendant's Undisputed Facts, plaintiff offers no contrary evidence.

*who owns, leases (or leases to), or operates a place of public accommodation."* 42 U.S.C. § 12182(a).

According to plaintiff, "operate" has been defined as "to put or keep in operation; to control or direct the functioning of; to conduct the affairs of; to manage." *Neff v. American Dairy Queen Corp.* 58 F.3d 1063, 1066 (5th Cir.1995). Plaintiffs concluded that defendants "operate" the strip of land and therefore are obligated to construct a ramp thereon.

As both the definition of "operate" and "facility" require that defendant exercise control over the property, it is difficult to see the relevance of this distinction. *See* 28 C.F.R. Part 36, App. B at 677 (2003) (facility defined as "only ... the site over which the private entity *may exercise control*....") (emphasis added). Thus, approached either way, the question remains: did defendants exercise control over the strip of land owned by the City of Chico?

However, assuming *arguendo* that the "operate" language in 42 U.S.C. § 12182(a) provides the applicable standard, plaintiff nonetheless offers no evidentiary support for her contention that defendants exercise actual control over the strip of land. Instead, she argues that (1) California law confers upon defendants sufficient control to fall within the meaning of "operate" in the ADA, and (2) a district court case in this circuit has held a private entity responsible for improvements on roads, crosswalks etc. which were not entirely within the facility. The court will address each contention in turn.

First, plaintiff asserts that defendants exercised control over the strip of land as a matter of law because California Building Code, Title 24 § 7107 (1989 version) and California Street and Highway Code § 5870 impose on defendant a duty under state law to construct and pay for accessible ramps, even where located on public land. Whether the above-referenced code sections impose such a duty on defendants is not as clear as plaintiff suggests. Nonetheless, the court need not decide this question because, assuming such a duty did exist under state law, it does not follow that defendants therefore "operated" the strip of property for purposes of Title III Liability. To the contrary, the undisputed fact remains that defendants could make no improvements or repairs to the strip of land—either voluntarily or out of legal obligation—without obtaining permission from the City of Chico to do so. Accordingly, for purposes of the ADA, plaintiff did not exercise control over the land.

Moreover, plaintiffs proffered interpretation is inconsistent with ADAAG regulations which expressly address a private entities' obligations to provide access from "adjacent roads or walkways controlled by public entities":

> In some cases, the private entity will have no control over access at the point where streets, curbs, or sidewalks already exist, and in those instances, the entity is encouraged to request modifications.... However, ...there is no obligation for a private entity subject to title III of the ADA to seek or ensure compliance by a public entity with title II. 28 C.F.R. Part 36, App. B at 711 (2003).

In writing the ADAAG regulations, the Department of Justice took pains to maintain a separation between public liability under Title II and private entity liability under Title III. *See* 28 C.F.R. Part 36, App. B at 677 ("The Department's regulation implementing title II, which will be codified at 28 CFR part 35, addresses the obligations of public entities to ensure accessibility by providing curb ramps at pedestrian walkways."); *Id.* ("Facilities operated by government agencies or other public entities as defined in this section do

not qualify as places of public accommodation. The actions of public entities are governed by title II of the ADA and will be subject to regulations issued by the Department of Justice under that title.") By imposing liability on private entities for alleged barriers on lands owned and maintained by public entities, plaintiff would import much of Title II into Title III, and greatly blur the distinction between the two.

Second, plaintiff contends that a district court within this circuit has previously found a private entity responsible for ADA violations occurring on public land. However, the case relied on by plaintiff, *Independent Living Resources v. Oregon Arena Corp.*, 1 F.Supp.2d 1124, does not support plaintiff's conclusion. In that case, a non-profit agency sued the owner of the Rose Garden, an indoor multipurpose arena constructed in Portland, Oregon seeking to impose liability on the arena owner for ADA violations on "streets, sidewalks, cross-walks, and similar improvements that connect the Rose Garden with adjacent parking garages and trolley station." *Id.* at 1148. Defendant defended on the ground that the improvements were the sole obligation of the City of Portland. The court disagreed, noting that the "improvements are mostly within the boundary of the site," and "it was defendant not the City of Portland—that designed and built most of the improvements in question." *Id.* The court distinguished the trolley station and adjacent bus stop, which were outside of the Rose Garden site. Noting that the record was incomplete, the court concluded:

> "The property is owned by Tri–Met,[the municipal transportation system] and it appears that Tri–Met, rather than defendant, had exclusive control over the design and construction of those particular improvements. If so, then Tri-met, rather than defendant ... may well be responsible for any ADA violations regarding those particular improvements."

*Id.* at 1148. The court deferred judgment on liability as to the trolley and bus stop because Tri–Met was not a party and had not had an opportunity to brief the issues.

In summary, the *Oregon Arena* court imposed liability on defendant only for improvements which were primarily within the site controlled by defendant and which were designed and constructed by defendant. Here, by contrast, the City owns the strip of grass. Further, the City, rather than defendant, designed and constructed the sidewalk, and defendants submit evidence that they do not maintain the grass, make repairs or otherwise improve to the strip of land. Consequently, under *Oregon Arena* defendant is not obligated by the ADA to construct a ramp across the public land.

Because the court finds that defendants are not obligated by the Americans with Disabilities Act to construct an access ramp to connect the public sidewalk to the Store parking lot, plaintiff's motion for summary adjudication is DENIED.

**B. Remaining ADA Violations**

According to defendant, the remaining allegations in the complaint are either (1) factually unsupported, or (2) subsequently have been remedied by defendants and therefore are moot.

Plaintiff does not contest defendants assertion that the allegations referenced in the complaint either were factually unsupported or have been remedied. (*See* Pl.'s Opp'n at 14–15) (disputing that plaintiff is limited to pursuing injunctive relief for barriers alleged in initial complaint.) Instead, plaintiff directs the court's attention to a host of new violations allegedly uncovered by plaintiff's expert, Joe Card, during an inspection of the store.

The Court declines to consider new allegations raised by plaintiff for the first time in her Memorandum in Opposition to Summary Judgment.

■ As an initial matter, these factual allegations do not appear in plaintiffs complaint, and plaintiff has not sought to amend the complaint to include them.[5] Plaintiff incorrectly asserts that *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), permits plaintiff to file a boilerplate complaint containing hypothetical and generalized allegations of discrimination[6] to be amended after discovery to reflect the actual violations alleged.[7] To the contrary, *Leatherman* merely reiterated its prior holding that Rule 8(a) does not require a claimant to set out in detail the facts upon which he bases his claim: "All the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 167, 113 S.Ct. 1160 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). While plaintiff is not required to plead *detailed* facts, she must plead *some* facts. *See DM Research Inc. v. College of American Pathologists*, 170 F.3d 53, 55 (1st Cir.1999)(while the complaint need not provide evidentiary detail, "the price of entry, even to discovery, is for plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome. Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.") To permit plaintiff to construe her complaint as entirely generic and, throughout the litigation, incorporate any new factual allegations without seeking amendment would read the "fair notice" requirement out of Rule 8(a) and would seriously undermine the rule's goal of encouraging expeditious resolution of disputes. The inequity of such practice is well illustrated by the history of this litigation: defendant was not aware of plaintiff's newly-advanced allegations of discrimination until at least April 16, 2004, a year and three months after the complaint was filed, nearly a month after the close of discovery, and two months after defendants filed their motion for summary judgment. As a result, defendant had no opportunity to depose witnesses regarding the new allegations or to summarily adjudicate them prior to trial. Accordingly, the court declines to consider plaintiff's newly-asserted ADA violations.

There is a second basis for declining to consider these allegations. The sole evidence supporting these allegations is provided by plaintiff's ADA expert, Joe Card. However, plaintiff failed to timely submit a expert report for Joe Card, as required under Rule 26(a)(2) and this court's May 12, 2003 Pretrial Scheduling Order.[9] It is

---

5. Nor would the court grant leave to amend at this late stage in the proceeding as plaintiff has not demonstrated good cause. Fed. R. Civ. Pro. 16(b).

6. In this case plaintiff's allegations broadly covered "access to the store from public sidewalks, parking or public transportation," "access to the areas of the store where goods and services are made available to the public" and "access to restroom facilities": in short the entire interior and exterior of the Store. (Pl.'s Comp. ¶¶ 28–30.)

7. Certainly, plaintiff could move to amend the complaint to allege violations identified during discovery.

9. Attached as an exhibit to the declaration of Joe Card, filed with the court on April 16, 2004, approximately four months after the expert witness disclosure deadline established in the court's scheduling order, is a document entitled "Disabled Accessibility Code Violations: Pier 1 Imports, 1931 East 20th St., Chico, CA 95928." (Exh. I to the Declaration

precisely these types of eleventh-hour revelations by experts that Rule 26 was designed to prevent. *See* Official Comment to 1993 Amendments (Rule 26(a)(2) "requires that persons retained ... to provide expert testimony ... must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination and the reasons therefor.") Mr. Card's declaration was disclosed well after defendants filed their motion for summary judgment and just over a month before the deadline for filing dispositive motions, leaving defendants with inadequate time to respond to the host of new allegations contained therein. For this reason, the court grants defendant's motion to strike the entirety of Mr. Card's declaration. Without the support of competent evidence, plaintiff has failed to demonstrate a triable issue of fact as to the presence of the newly-alleged architectural barriers in the Store. *See Anderson,* supra 477 U.S. at 256, 106 S.Ct. 2505 (holding that, where the moving party demonstrates an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who must set forth specific facts based on admissible evidence to show that there is a genuine issue for trial.)

## II. State Law Claims

The court declines to exercise jurisdiction over plaintiff's remaining state law claims. Accordingly, defendants' motion for summary judgment is GRANTED as to all claims. Plaintiffs motion for summary adjudication is DENIED.

## III. Sanctions

Defendants also move for sanctions under Federal Rules of Civil Procedure 11 and 26 and 28 U.S.C. § 1927.

of Joe Card.) Presumably this document in-

## A. Rule 11 Sanctions

Rule 11 provides, in relevant part, that:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed.R.Civ.P. 11(b).

The certification requirements of Rule 11 are violated "if the paper filed ... is frivolous, legally unreasonable or without factual foundation, even though ... not filed in subjective bad faith." *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir.1986). Rule 11 requires attorneys to conduct a reasonable inquiry into the law and facts before signing pleadings. *Business Guides v. Chromatic Enters., Inc.,* 498 U.S. 533, 542, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991).

Defendant contends that plaintiff's counsel violated Rule 11's certification requirement by filing a boilerplate complaint con-

tends to satisfy Rule 26(a)(2).

taining factually unsupported allegations, without conducting a reasonable investigation to determine whether the allegations were in fact true. Specifically, defendants point to paragraphs 28 through 30, which appear to identify the alleged barriers complained of by plaintiff:

28. Plaintiff was denied equal access to The store, because Defendants failed to provide access to The store from public sidewalks, parking or public transportation. This failure may include, but is not limited to, installing an entrance ramp, widening entrances, reducing door pressure, and providing accessible parking spaces.

29. Plaintiff was also denied access to The store, because Defendants failed to provide access to those areas of The store where goods and services are made available to the public. This failure may include, but is not limited to, adjusting the layout of display racks, widening of doors, rearranging furniture, providing Brailled and raised character signage, providing visual alarms, adding an accessible check-out counter, and installing ramps.

30. Plaintiff was also denied access to The store, because Defendants failed to provide access to restroom facilities at The store. This failure may include, but is not limited to, removal of obstructing furniture or vending machines, widening of doors, installation of ramps, providing accessible signage, widening of toilet stalls and installation of grab bars.

(Pl.'s Complaint ¶¶ 28–30.)

Many of the allegations contained in this laundry list—specifically those relating to check-out counters, aisle widths, toilet stalls, vending machines, door widths, and grab bars in the restroom—are objectively false and not supported by any competent evidence. For example, the store does not have vending machines or toilet stalls. Moreover, neither plaintiff nor plaintiff's experts provide evidentiary support for these allegations.

■ Plaintiff responds that the list provided was not intended to detail the specific violations encountered by plaintiff at the Store. Rather, these allegations were "intended to illustrate ways that a disabled person can be denied access." (Pl.'s Mem. in Opp'n to Defs.' Motion for Sanctions at 12.) Plaintiff continues: "As the word 'may' indicates in paragraphs 28–30, neither Pickern nor her counsel intended to allege anything other than give defendants notice of the general areas that denied her equal access." (Id.) Contrary to plaintiff's counsel's understanding, counsel cannot evade Rule 11's investigation requirement by filing a generic complaint which lists "hypothetical" violations. *Business Guides, Inc.*, 498 U.S. at 542–45, 111 S.Ct. 922. In short, plaintiff's counsel signed a complaint containing allegations without factual support. This constitutes a violation of Rule 11.

### 2. Sanctions

Once the court finds that Rule 11 has been violated, it next determines the appropriate sanction. A court is not obligated to impose monetary sanctions, and, where imposed, the amount of sanction should not exceed what "is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed.R.Civ.P. 11(c)(2).

■ In the present case, the court finds that monetary sanctions are not warranted. At oral argument, the court admonished plaintiff's counsel regarding his practice of filing complaints containing generic, hypothetical allegations. As a result of that hearing, plaintiff's counsel has sought

to amend the pleadings in various pending matters before the court, consistent with the guidance provided by the court at the hearing. Consequently, it does not appear that monetary sanctions are required in order to "deter repetition of such conduct" in the future.

Accordingly, the court finds that plaintiff's counsel violated Rule 11 by filing a generic complaint with hypothetical violations, but determines that monetary sanctions are not warranted.

### B. Rule 26 Sanctions

Rule 26(g) imposes parallel obligations on attorneys in the discovery context. Specifically, Rule 26(g) provides that an attorney's signature on a discovery request certifies that the request:

(A) Consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;

(B) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and

(C) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.

Fed.R.Civ.P. 26(g)(2).

Under Local Rule 72–302(c)(1), "all discovery motions, including Fed.R.Civ.P. 37 motions" are to be heard before the magistrate judge. This is particularly appropriate in cases such as this, where numerous discovery motions, including motions for protective orders and motions to compel discovery, were heard by the assigned magistrate judge. Under such circumstances, the district is not familiar with parties' counsel's conduct during the course of discovery and is ill suited to evaluate a motion for discovery sanctions. Accordingly, this motion for sanctions under Rule 26 was improperly brought before the district court judge.

### C. 28 U.S.C. § 1927

28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

■■■ Section 1927 sanctions are appropriate when there is no obvious violation of the Federal Rules, but where, within the rules, the proceeding is conducted in bad faith for the purpose of delay or increasing costs. *In re Yagman*, 796 F.2d 1165, 1187 (9th Cir.1986), as amended by 803 F.2d 1085 (9th Cir.1986), cert. denied by *Real v. Yagman*, 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987). In order to impose sanctions under section 1927, the court must find that (1) the attorney multiplied the proceedings; (2) the attorney's conduct was unreasonable and vexatious; and (3) the conduct resulted in an increase in cost of the proceedings. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002). An attorney's conduct is vexatious or unreasonable where he acts recklessly, with knowledge. *Id.*

■■■ Here, defendants' request for sanctions under section 1927 fails on the first prong. Defendants assert that plaintiffs multiplied the proceedings by filing a frivolous lawsuit with insubstantial allegations that were not investigated prior to filing the complaint and engaging in "grossly overbroad discovery designed to harass defendants and increase legal fees."

(Defs.' Mot. for Sanctions at 15.) First, as to the initial filing of the lawsuit, the court has found that the lawsuit contained unverified and inaccurate allegations. This resulted from plaintiff's counsel's mistaken belief that filing a complaint containing "hypothetical" allegations was consistent with Rule 11. The court addressed this as a Rule 11 issue, and will not reconsider sanctions under section 1927 for the same conduct. As to plaintiff's counsel's conduct during discovery, the record does not completely support defendants' position. While the magistrate judge did enter a protective order at defendants' request, he also granted plaintiff's motion to compel discovery. Based on this, it is not clear that the magistrate judge found plaintiff's counsel's discovery requests so "grossly overbroad" as to warrant sanctions.

Accordingly, the court finds that plaintiff's counsel's conduct does not warrant sanctions under section 1927.

## CONCLUSION

For the foregoing reasons, the court makes the following orders:

(1) Plaintiff's motion for summary adjudication is DENIED.

(2) Defendants' motion for summary judgment as to all claims is GRANTED.

(3) Defendant's motion for monetary sanctions is DENIED.

(4) The clerk is instructed to close the file.

IT IS SO ORDERED.