**F I L E D**

**PUBLISH**

**AUG 29 2001**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DR. MARK HAYES, an individual;
ED BROCKSMITH, an individual;
OKLAHOMA WILDLIFE
FEDERATION, an Oklahoma non-
profit corporation; SAVE THE
ILLINOIS RIVER, INC., an Oklahoma
non-profit corporation,

       Plaintiffs - Appellants,

v.

CHRISTIE WHITMAN, in her
capacity as Administrator of the
United States Environmental
Protection Agency; UNITED STATES
ENVIRONMENTAL PROTECTION
AGENCY REGION VI; GREGG A.
COOKE, in his capacity as Regional
Administrator for the United States
Environmental Protection Agency
Region VI,[1]

       Defendants - Appellees.

No. 00-5113

---

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. Nos. 97-CV-1090-BU & 99-CV-20-BU)**

---

[1]Pursuant to Fed. R. App. P. 43(c), Christie Whitman has been substituted
for Carol Browner and Gregg A. Cooke has been substituted for Jane Saginaw.

Blake K. Champlin of Shipley, Jennings & Champlin, P.C., Tulsa, Oklahoma, for Plaintiffs-Appellants.

Joan M. Pepin, Attorney, United States Department of Justice, Washington, D.C. (Lois J. Schiffer, Assistant Attorney General; John A. Bryson and Eric G. Hostetler, Attorneys, United States Department of Justice; and Michael G. Lee, Of Counsel, Environmental Protection Agency, Washington, D.C., and David Gillespie, Of Counsel, Environmental Protection Agency, Dallas, Texas, with her on the brief), for Defendants-Appellees.

---

Before **EBEL**, **ANDERSON** and **MURPHY**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

This case is about a long-neglected provision of the Clean Water Act that obligates the states to develop pollution limits for waters that are not meeting applicable quality standards. These limits (known as TMDLs) are submitted to the Environmental Protection Agency (EPA), and the EPA must approve or disapprove them. In their complaints, Plaintiffs alleged that Oklahoma has never submitted TMDLs for the EPA to review, that this complete failure constitutes a "constructive submission" of no TMDLs, and that the EPA has a mandatory duty to approve or disapprove the constructive submission.

The EPA produced uncontradicted evidence that Oklahoma has in fact submitted (and the EPA has approved) a small number of TMDLs and has a schedule to develop many more TMDLs over the next twelve years. Although

- 2 -

Plaintiffs dispute the adequacy of the approved TMDLs, we hold that in these circumstances a constructive-submission theory does not apply.

Because Plaintiffs' complaints did not attack the EPA's approval of the allegedly inadequate TMDLs, they may not now proceed on that theory. In addition, the district court did not abuse its discretion in denying Plaintiffs' motion to amend their complaint well into this litigation to add this new theory. Finally, we hold that Plaintiffs waived their right to challenge the district court's exclusion of their expert affidavit because they failed to raise this objection to the magistrate judge's report. We therefore AFFIRM the district court's rulings.

## BACKGROUND

Among other provisions, the Clean Water Act, 33 U.S.C. §§ 1251-1376, requires the states to implement programs that protect the quality of intrastate waters. Id. § 1313. Each state first establishes, subject to EPA approval and ongoing review, water quality standards: designated uses for a body of water and water quality criteria based on such uses. Id. § 1313(a)-(c); 40 C.F.R. § 130.3. Oklahoma's water quality standards are not at issue in this case.

The state must then identify the waters within its boundaries for which the other regulatory requirements are not stringent enough to implement an applicable water quality standard. 33 U.S.C. § 1313(d)(1)(A). The state must rank its

impaired waterbodies by priority, "taking into account the severity of the pollution and the uses to be made of such waters." Id.

For each impaired waterbody, in accordance with its priority ranking, the state must establish a total maximum daily load (TMDL) for certain pollutants identified by the EPA. Id. § 1313(d)(1)(C). A TMDL establishes the "maximum daily discharge of pollutants into a waterway." Scott v. City of Hammond, 741 F.2d 992, 996 (7th Cir. 1984).[2] The lists of impaired waterbodies and TMDLs are subject to EPA approval:

> Each State shall submit to the Administrator from time to time, with the first such submission not later than one hundred and eighty days after [the Administrator first identifies those pollutants suitable for TMDL measurement], for his approval the waters identified [impaired waterbodies] and the loads [TMDLs] established . . . . The Administrator shall either approve or disapprove such identification and load not later than thirty days after the date of submission. If the Administrator approves such identification and load, such State shall incorporate them into its current [continuing planning process]. If the Administrator disapproves such identification and load, he shall not later than thirty days after the date of such disapproval identify such waters in such State and establish such loads for such waters as he determines necessary to implement the water quality standards applicable to such waters and upon such identification and

---

[2]The EPA recently revised its regulations to give a more detailed definition. Under the new regulation, a TMDL is "a written, quantitative plan and analysis for attaining and maintaining water quality standards in all seasons for a specific waterbody and pollutant." 40 C.F.R. § 130.2(h). It must identify, among other things, the greatest amount of pollution that the waterbody can tolerate without violating its water quality standards, the amount by which the current level of pollution deviates from this, and allocations of the maximum tolerable pollution among various polluters and natural background sources. Id.

establishment the State shall incorporate them into its current plan . . . .

33 U.S.C. § 1313(d)(2).  The first submission was due in June 1979, 43 Fed. Reg. 60,662 (1978), and between 1992 and 2000, submissions were due biennially, on April 1 of even-numbered years, 40 C.F.R. § 130.7(d)(1) (2000).[3]

Plaintiffs are individuals who use Oklahoma's waters and groups that advocate protecting water quality in the state.  In their separate but virtually identical complaints, they alleged that Oklahoma had identified over 500 impaired waterbodies, but that in the eighteen years between 1979 (when the first submission to the EPA was due) and 1997 (when the complaints were filed) the state had failed to develop TMDLs for the impaired waterbodies.  This failure, they alleged, was "so deficient as to constitute a constructive submittal of no TMDLs, which in turn triggers the EPA's mandatory duty to develop the TMDLs itself" within thirty days.

The complaints focused primarily on the Clean Water Act's citizen-suit provision, which confers jurisdiction on the district courts over civil actions brought by "any citizen . . . on his own behalf . . . against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under [the Clean Water Act] which is not discretionary with the Administrator."

---

[3]That provision has since been repealed.  Beginning in 2002, a list of impaired waterbodies must be submitted every four years.  40 C.F.R. § 130.30(a).

33 U.S.C. § 1365(a). The complaints also alleged that the EPA's failure to develop TMDLs in the face of Oklahoma's constructive submission of no TMDLs "constitutes an arbitrary and capricious action and an abuse of discretion" under the Administrative Procedures Act (APA).

On the EPA's motion to dismiss, the district court accepted Plaintiffs' theory that a complete failure to submit TMDLs could constitute a constructive submission of no TMDLs, triggering a mandatory duty of the EPA. The court therefore found that Plaintiffs had stated a claim under the Clean Water Act's citizen-suit provision and under the APA § 706(1) to compel agency action unlawfully withheld. It found, however, that Plaintiffs had not stated a claim under APA § 706(1) to compel agency action unreasonably delayed or § 706(2)(A) to set aside agency action as arbitrary, capricious, or abuse of discretion, as Plaintiffs had neither identified any final agency action nor had Plaintiffs petitioned the EPA to act.

The parties agree that Oklahoma submitted no TMDLs before 1994.[4] It is undisputed, however, that before this lawsuit was filed in December 1997 the EPA had approved at least a small number (somewhere between three and twenty-

---

[4]This long delay is not unique to Oklahoma. Cf. NRDC v. Fox, 93 F. Supp. 2d 531, 539 (S.D.N.Y. 2000) ("EPA Administrator Carol M. Browner . . . has frankly acknowledged what some scholarly observers had previously suggested: that the TMDL program was consciously neglected by the EPA until recent years . . . ." (footnote omitted)).

nine) of TMDLs for impaired waterbodies, although Plaintiffs argue that none of these met all the statutory and regulatory requirements for a TMDL. The EPA presented uncontroverted evidence to the district court that in 1998 Oklahoma established a schedule to complete more than 1400 TMDLs by 2010. Although Oklahoma did not fully meet its first interim deadline in 1999, it has adjusted the schedule and still expects to finish by 2010.

Given this undisputed evidence, a magistrate judge recommended granting the EPA's motions for summary judgment and to strike an expert affidavit Plaintiffs had submitted. Plaintiffs objected to the summary-judgment recommendation and sought leave to amend their complaint to add APA claims against the EPA's approval of the allegedly inadequate TMDLs. The district court adopted the magistrate judge's report and denied the motion to amend the complaint. Plaintiffs now appeal from all of the orders.

**DISCUSSION**

The district court had jurisdiction under 28 U.S.C. § 1331 and 33 U.S.C. § 1365(a). We have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's dismissals for failure to state a claim upon which relief can be granted, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to Plaintiffs. Sutton v. Utah State Sch.

for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999). We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to Plaintiffs. Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999).

I. Clean Water Act Citizen-Suit Claim

The district court accepted Plaintiffs' "constructive submission" theory, which was first established in Scott v. City of Hammond, 741 F.2d 992, 996 (7th Cir. 1984) (per curiam). Under Scott, "if a state fails over a long period of time to submit proposed TMDL's, this prolonged failure may amount to the 'constructive submission' by that state of no TMDL's." 741 F.2d at 996. Neither party challenges this ruling by the district court, and we agree with Scott to this extent:[5] A state may at least theoretically act in such a way that it conveys to the EPA the message that it has affirmatively determined not to submit TMDLs for its impaired waterbodies. Such conduct could be treated by a court as a "submission" (a "constructive submission") of no TMDLs. As a "submission," it

_____

[5]It appears that only one court has rejected Scott's holding that a constructive submission of no TMDLs can trigger a nondiscretionary duty. See NRDC v. Fox, 30 F. Supp. 2d 369, 377 (S.D.N.Y. 1998) (holding that it lacked jurisdiction under the Clean Water Act's citizen-suit provision, because "EPA has at least some discretion to determine at what point it is appropriate to deem state inaction a 'constructive submission' meriting intervention").

would then trigger the EPA's nondiscretionary duty under § 1313(d)(2) to approve or disapprove the submission of "no TMDLs" within thirty days. If the EPA fails to respond within this period, it is subject to suit under the citizen-suit provision of the Clean Water Act to compel it to perform this nondiscretionary duty.

In Scott, the states had submitted no TMDLs, and this was enough to overcome a motion to dismiss filed by the EPA. 741 F.2d at 997. The Seventh Circuit remanded, instructing the district court to determine whether the failure to submit TMDLs was in fact a constructive submission of no TMDLs:

> There may be reasons, wholly unknown to us at this time, which may justify the states' failure to submit TMDL's and the EPA's concomitant failure to act. However, on remand, the district court may order the EPA to proceed as if the states had submitted proposals of no TMDL's unless the EPA promptly comes forward with persuasive evidence indicating the states are, or will soon be, in the process of submitting TMDL proposals or that some factor beyond the scope of the complaint has made TMDL submissions impracticable.

Id. at 997 n.11 (emphasis added). Only upon this determination that the states' inaction was so clear as to constitute a "constructive submission" of no TMDLs would the EPA then incur a nondiscretionary duty to approve or disapprove the constructive submission. If the EPA approved the constructive submission – i.e., if it determined for some reason that no TMDLs were needed – then that decision would be subject to judicial review like any other final agency action, presumably under the APA. Id. at 997; cf. id. at 995 (holding that the EPA's duty to approve

- 9 -

or disapprove a state's water quality standards might be nondiscretionary, "but the content of the standards is certainly at least somewhat discretionary with the EPA" and therefore ordinarily must be challenged through an APA suit rather than a Clean Water Act citizen's suit). If, on the other hand, the EPA disapproved the constructive submission, it would then be under a nondiscretionary duty to develop its own TMDLs. Id. at 997.

The constructive-submission theory turns on whether the state has determined not to submit a required TMDL for a given impaired waterbody. See id. at 997 (noting that the complaint "raises the possibility that the states have determined" that TMDLs are not needed (emphasis added)). If a state has submitted or soon plans to submit TMDLs for its impaired waterbodies, the constructive-submission analysis would be factually inapplicable. See, e.g., S.F. Baykeeper, Inc. v. Browner, 147 F. Supp. 2d 991, 1002 (N.D. Cal. 2001) ("California and the EPA have both been doing something about TMDLs, albeit not as rapidly as contemplated by the passage of the CWA. . . . The record does not support plaintiffs' contention that there has been a constructive submission of no TMDLs."); Sierra Club v. Hankinson, 939 F. Supp. 865, 872 n.6 (N.D. Ga. 1996) ("The Court does not find the constructive submission analysis to be appropriate for this case because Georgia has made some TMDL submissions, albeit totally inadequate." (emphasis in original)); cf. NRDC v. Fox, 93 F. Supp.

2d 531, 542 (S.D.N.Y. 2000) ("[S]o long as New York continues to participate actively and meaningfully in the effort to promulgate TMDLs for the waterbodies on its . . . priority list, the Court is of the view that the State has not 'refused' to act, and EPA therefore is under no duty to declare a 'constructive submission' of inadequate TMDLs by New York."); Idaho Sportsmen's Coalition v. Browner, 951 F. Supp. 962, 968 (W.D. Wash. 1996) (noting that while Idaho had submitted only two TMDLs and its schedule for future submissions was inadequate, "a 'constructive submission' has not yet occurred").[6]  As a corollary, the constructive-submission theory is not designed to challenge the timeliness or adequacy of the state's TMDL submissions, which involve discretionary (rather than nondiscretionary) duties of the EPA.

The constructive-submission theory that we accept under the Clean Water Act's citizen-suit provision is necessarily a narrow one.  It applies only when the state's actions clearly and unambiguously express a decision to submit no TMDL for a particular impaired waterbody.  Here, the evidence completely fails to

---

[6]Plaintiffs cite Kingman Park Civic Ass'n v. EPA, 84 F. Supp. 2d 1, 3-5 (D.D.C. 1999), as a case in which a constructive submission of no TMDLs was found even though the District of Columbia had submitted one TMDL after the notice of intent to sue.  Kingman Park is readily distinguishable from the facts of this case, however.  The Kingman Park opinion was on a motion to dismiss, and the submitted TMDL had been rejected by the EPA as inadequate.  Thus, Kingman Park has little similarity to this case, where Oklahoma submitted (and the EPA approved) a number of TMDLs before Plaintiffs' notice of intent to sue.

support Plaintiffs' constructive-submission theory.[7]  The uncontradicted evidence is that Oklahoma has submitted a number of TMDLs and is making progress toward completing about 1500 TMDLs over a twelve-year period.  In these circumstances, a constructive-submission claim is not viable.  Because the only nondiscretionary duty that Plaintiffs can allege is predicated upon a showing that Oklahoma had made a constructive submission of no TMDLs, the district court correctly found that Plaintiffs could not proceed under the Clean Water Act's citizen-suit provision.  We therefore affirm the grant of summary judgment for the EPA on this issue.

## II.  APA Claims

Plaintiffs also asserted an APA challenge in their complaints, which the district court dismissed in part and then granted summary judgment on the rest. We may affirm on any grounds supported by the record, even if not relied upon by

---

[7]Because the facts of this case do not meet the above criteria, we need not decide any further parameters of the constructive-submission theory – for example, how much inaction by the state is needed to give rise to an inference that there has been a constructive submission and when the EPA's duty to pass on the constructive submission begins to run.  Moreover, a recently promulgated regulation may alleviate the need to consider these questions in the future as well. See 40 C.F.R. § 130.35(a)(2) (providing that the EPA will establish a TMDL if the state fails to do so by the end of the one-year period in which the TMDL was scheduled to be established; the EPA must then establish one within at most four years).

the district court.  United States v. Sandoval, 29 F.3d 537, 542 n.6 (10th Cir. 1994).

The only APA challenge explicitly made in the complaints was to the EPA's failure to fulfill its nondiscretionary duty to develop its own TMDLs after Oklahoma's constructive submission of no TMDLs.  This argument duplicates the one Plaintiffs brought under the Clean Water Act citizen-suit provision.  Because review of Plaintiffs' claim is available under the Clean Water Act, it is not subject to review under the APA.  See 5 U.S.C. § 704 (limiting APA review to "final agency action for which there is no other adequate remedy in a court"); Bowen v. Massachusetts, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action."); Oregon Natural Res. Council v. United States Forest Serv., 834 F.2d 842, 851 (9th Cir. 1987) (dictum); Allegheny County Sanitary Auth. v. EPA, 732 F.2d 1167, 1177 (3d Cir. 1984).  Thus, we hold that this APA claim should be dismissed because it duplicates Plaintiffs' Clean Water Act claim, and we express no view on the other grounds relied on by the district court.

Plaintiffs argue that even if their constructive-submission theory fails, they should be allowed under the APA to challenge the EPA's approval of the allegedly inadequate TMDLs submitted by Oklahoma.  This new theory was first presented in Plaintiffs' response to the EPA's Motion to Dismiss at the district

court: "EPA's approval of the State's inadequate submissions, its tacit approval of Oklahoma's non-submissions over the past 19 years, and its decision – discretionary or not – to not establish TMDLs for Oklahoma itself, are all agency actions that are arbitrary and capricious . . . ." While it might be appropriate for a court to consider additional facts or legal theories asserted in a response brief to a motion to dismiss if they were consistent with the facts and theories advanced in the complaint, cf. Sterling v. Kazmierczak, 983 F. Supp. 1186, 1189 (N.D. Ill. 1997), a court may not consider allegations or theories that are inconsistent with those pleaded in the complaint. E.g., Henthorn v. Dep't of Navy, 29 F.3d 682, 688 (D.C. Cir. 1994) ("[T]he sparse case law addressing the effect of factual allegations in briefs or memoranda of law suggests that such matters may never be considered when deciding a 12(b)(6) motion, and most certainly may not be considered when the facts they contain contradict those alleged in the complaint." (citations omitted)); Pennsylvania ex rel. Zimmerman v. Pepsico, 836 F.2d 173, 181 (3d Cir. 1988) ("[T]he legal theories set forth in Pennsylvania's brief are helpful only to the extent that they find support in the allegations set forth in the complaint. It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (alterations omitted)). The new theory of improper approval of defective TMDLs submitted by Oklahoma is inconsistent with Plaintiffs' allegation in their complaints that Oklahoma "has, for the last 18

years, failed to develop TMDLs" for the state's impaired waterbodies. In their complaints, Plaintiffs allege that Oklahoma did not submit any TMDLs and that Oklahoma's conduct amounted to a declaration that it did not intend to submit any TMDLs. That is inconsistent with the argument Plaintiffs advanced in the brief in opposition to the Motion to Dismiss, that Oklahoma had submitted TMDLs, but they were defective and should not have been approved by the EPA. Thus, the district court properly declined to consider it without a formal amendment to the complaints.

Plaintiffs seem to think that it was unfair to require them to plead their APA claim adequately in the complaints, because they did not know at that time what (if any) actions the EPA had taken at that point. We find this unpersuasive. The EPA's actions were matters of public record. Moreover, as we discuss further below, Plaintiffs were on notice at least from the time that the EPA filed its motion to dismiss that the EPA believed that Oklahoma had filed, and the EPA had approved, a number of TMDLs. In spite of the EPA's suggestion that Plaintiffs amend their complaint to allege specifically an APA claim based on the EPA's alleged abuse of discretion in approving the submitted TMDLs, Plaintiffs did not seek to do so at that time nor did they abandon the constructive-submission theory. Indeed, one of the consolidated complaints in this case was filed after the district court had dismissed the APA claims – well after Plaintiffs

were on notice that the EPA had taken some actions on Oklahoma's TMDLs– but even this complaint did not assert a broader APA claim.

Because the complaints alleged only a narrow APA claim, one duplicative of the Clean Water Act claim, we affirm the district court's dismissal of the APA claims. We express no view on whether the TMDLs approved by the EPA meet the applicable statutory and regulatory requirements.

III.  Denial of Leave to Amend the Complaint

We review the district court's denial of a motion to amend a complaint for abuse of discretion. Ramirez v. Oklahoma Dep't of Mental Health, 41 F.3d 584, 596 n.9 (10th Cir. 1994). "[W]e have often found untimeliness alone a sufficient reason to deny leave to amend." Viernow v. Euripides Dev. Corp., 157 F.3d 785, 799 (10th Cir. 1998). In this case, the district court relied solely on Plaintiffs' undue delay in seeking to amend their complaint to add broader APA claims.

The proposed amendment would have added references to the APA throughout the complaint. In particular, it would have (1) replaced the allegation that Oklahoma failed to develop TMDLs with one that it "failed to develop TMDLs for all of its" impaired waterbodies; and (2) added a sentence stating that "the EPA's approval of individual TMDL submissions from the State of Oklahoma which do not comply with the TMDL statutory provisions or

- 16 -

regulations and the EPA's failure to disapprove the inadequate quantity of TMDL submissions from the State of Oklahoma both constitute final agency actions subject to review" under § 706(2)(A).

Plaintiffs filed their first set of complaints in December 1997. They were on notice that the EPA had approved some TMDLs at least from April 1998, when the EPA filed its motion to dismiss and informed the court that it had approved about forty TDMLs from Oklahoma since 1992. Rather than seek to amend their complaint at that time, Plaintiffs filed a motion for reconsideration of the dismissal of their APA claims. They also filed another complaint to cure a notice problem but did not add additional APA claims. Thereafter, they filed a summary judgment motion. Only after the magistrate judge recommended ruling against them on their citizen-suit claim did they seek to amend. The application for leave to amend was filed in February 2000. As the district court noted, this was more than two years after the initial complaint and eighteen months after the administrative record had been filed.

In these circumstances, it was within the district court's discretion to deny leave to amend. This case is similar to Viernow, in which the plaintiff sought to amend nineteen months after filing his initial complaint and only after the trial court orally granted the defendants' motion for summary judgment. 157 F.3d at 799-800. We saw no justification for the plaintiff's failure to amend at an earlier

date, and noted that "we do not favor permitting a party to attempt to salvage a lost case by untimely suggestion of new theories of recovery." Id. at 800. We therefore upheld the district court's denial of leave to amend. Id.

We affirm the district court's denial of leave to amend the complaint.

IV. Striking Plaintiff's Expert Affidavit

Plaintiffs argue that the district court erred in striking their affidavit from Barry Sulkin, an expert on TMDLs. The affidavit set forth Sulkin's opinion that none of the TMDLs submitted by Oklahoma met all the statutory and regulatory requirements for TMDLs. As the district court noted and Plaintiffs conceded at oral argument, Plaintiffs failed to raise this in their objections to the magistrate judge's report. They therefore have waived the issue. Talley v. Hesse, 91 F.3d 1411, 1412 (10th Cir. 1996). When Plaintiffs were informed about waiver, as in this case, we enforce the waiver unless "the ends of justice dictate otherwise." Id. at 1413. For the reasons given above, Sulkin's affidavit, which is about the substantive adequacy of the TMDLs approved by the EPA, is beyond the scope of the legal issues in this case. We see no reason to think the ends of justice are implicated by the court's striking this affidavit and therefore deem the issue waived.

## CONCLUSION

We AFFIRM the district court's disposition in its entirety.