NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 25, 2011[*]
Decided May 25, 2011

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

No. 11-1479

| | |
|---|---|
| PAUL E. KINCAID, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 09-3053 |
| SANGAMON COUNTY, et al., *Defendants-Appellees*. | Harold A. Baker, *Judge*. |

**O R D E R**

Paul Kincaid brought suit under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Sangamon County, many of its jail personnel, and members of the United States Marshals Service were deliberately indifferent to his medical needs while he was a federal pretrial detainee in the Sangamon

---

[*] The appellees were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Accordingly, the appeal is submitted on the appellant's brief and the record. *See* FED. R. APP. P. 34(a)(2)(C).

County Jail. After screening the case as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), the district court dismissed Kincaid's complaint for failure to exhaust his administrative prison remedies. Because an exhaustion defense is not evident from the complaint, we vacate the judgment and remand for additional proceedings.

For purposes of this appeal only, we accept the allegations in Kincaid's complaint as true. *See Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011). Beginning in September 2006 Kincaid's health began to deteriorate; he lost 84 pounds in 200 days, about one-third of his body weight, because the food at the jail caused vomiting and indigestion. But a doctor refused to authorize a modified diet, declaring the weight loss healthy. By March 2007, Kincaid's medical situation became dire: he told the medical staff that he had begun suffering from dizziness, a high fever, frequent vomiting, diarrhea, a strong burning sensation while urinating, a racing pulse, and an inability to swallow. When he initially reported these symptoms on March 31, a nurse gave him a throat lozenge. The next day, he reported to Nurse Lee Ann Brauer that his symptoms had worsened further, but she declined to measure his vitals or hydrate him. After complaining of excruciating pain later that night, Dr. Joseph Mauer prescribed an antibiotic, but Kincaid vomited on his first attempt to swallow it.

During the next two days, Kincaid's debilitating symptoms persisted, but he received no treatment. He experienced severe stomach pain, more frequent vomiting, a continued high fever and pulse, and ongoing difficulty urinating and swallowing. His pastor, family, and the lawyer who was representing him in his criminal case pleaded for medical treatment. His family even prepared a medical power of attorney. But when that document was delivered to the facility Superintendent William Strayor brought Kincaid into a public hallway and screamed profanity at him for seeking medical attention. Intimidated by Strayor's admonition that he was not a "file clerk" and that Kincaid and his family should "shut the fuck up," Kincaid told his family to stop asking for help.

On April 4, five days after Kincaid first reported his symptoms, Dr. Maurer ordered an x-ray and blood and urine tests. Two days later, the blood work revealed more than fifteen different abnormalities, but he still received no treatment. After five more days of medical inattention, Kincaid went into convulsions and was rushed to a nearby hospital for emergency surgery to remove his gallbladder, which had by now become gangrenous. (This condition, also known as acute cholecystitis, is the death of the gallbladder tissue and usually results from gallstones blocking the duct that joins the gallbladder to the common bile duct. A gangrenous gallbladder can result in death if left untreated. *See* STEDMAN'S MEDICAL DICTIONARY 365 (28th ed. 2006).)

Kincaid filed his federal complaint in February 2009, alleging that prison officials unnecessarily delayed urgent medical treatment, prolonged his pain, and risked his life out of deliberate indifference. In addition to his complaint, Kincaid submitted a written statement elaborating on his claims against the respective defendants. After receiving those documents, the district court conducted a "merit-review hearing" with Kincaid by telephone in April 2009. (The contents of that conversation are not in the record.) Nothing else happened until February 2011, nearly two years later, when the court dismissed the case for failure to exhaust administrative remedies. In dismissing the case, the district court stated that Kincaid "admits that he did not file any grievances while at the Sangamon County Jail, nor did he file a grievance against the United States Marshal under the Federal Tort Claims Act." The court reasoned that this admission justified dismissing the case because it was "unmistakable" and "apparent from the complaint itself" that Kincaid failed to exhaust his administrative remedies.

On appeal Kincaid objects to the district court's conclusion that he failed to exhaust and argues that, by dismissing the case at screening, the court denied him an opportunity to rebut the not-yet-asserted affirmative defense of non-exhaustion. Kincaid adds that if he did not exhaust, his failure to do so was excused because he was intimidated by jail staff and incapacitated by his medical condition. He argues that the district court should have given him a chance to substantiate these excuses.

Kincaid is right to take issue with the district court's treatment of his complaint. Exhaustion is an affirmative defense, so he was not required to plead that he pursued all of the prison's internal grievance procedures. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008). A district court may, however, dismiss a complaint where "the existence of a valid affirmative defense, such as the failure to exhaust, is so plain from the face of the complaint that the suit can be regarded as frivolous." *Turley v. Gaetz*, 625 F.3d 1005, 1013 (7th Cir. 2010); *see Arroyo v. Starks*, 589 F.3d 1091, 1096-97 (10th Cir. 2009); *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007). But Kincaid's complaint, and his written submission for the merit-review hearing, make no mention of exhaustion. They focus only on the symptoms he experienced and the efforts he made to get medical treatment, allegations that are of course necessary to state a claim of deliberate indifference. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

We have considered the possibility that when the district court wrote, "[t]he plaintiff admits that he did not file any grievances," it was relying on comments Kincaid may have made during the telephonic merit-review hearing held two years before the court issued its decision. Ordinarily we might fault Kincaid for not seeking a transcript of that hearing, *see* FED. R. APP. P. 10(b)(2); *United States v. Santiago-Ochoa*, 447 F.3d 1015, 1018-19 (7th Cir. 2006), but in this case a transcript would not matter. The exception to the rule that complaints

should not be dismissed at screening for failure to exhaust requires that the affirmative defense be obvious on the face of the *complaint* itself, *see Turley*, 625 F.3d at 1013; *Walker v. Thompson*, 288 F.3d 1005, 1009-10 (7th Cir. 2002), and as we have just explained, nothing in the complaint makes it apparent that Kincaid failed to exhaust.

This is not the end, though, because we also have Kincaid's brief on appeal to consider, and *that* may supplement the complaint. *See Flying J, Inc. v. City of New Haven*, 549 F.3d 538, 542 n.1 (7th Cir. 2008) (explaining that we can consider additional facts presented in appellate briefs as long as they are consistent with the underlying complaint); *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001) (same); *Chavez v. Ill. State Police*, 251 F.3d 612, 650 (7th Cir. 2001) (same). To challenge the district court's ruling on exhaustion, Kincaid argues on appeal that (1) jail personnel intimidated him into silence and (2) physical incapacitation prevented him from grieving his injury. In so arguing, Kincaid effectively concedes in his appellate brief what remained unsaid in his submissions to the district court: that he did not exhaust his administrative remedies in the midst of his medical emergency and perhaps afterward.

Nonetheless, we think that Kincaid's brief sufficiently alleges that, if he did not exhaust, administrative remedies were unavailable to him, and thus not mandatory, both during and after his medical emergency. *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Based on his allegations, it is plausible, *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), that at least two impediments made a timely grievance impossible. The threat from the superintendent that Kincaid and his family needed to "shut the fuck up" may have intimidated Kincaid and rendered the grievance process unavailable to him. *See Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008); *Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir. 2006); *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004). And Kincaid's incapacity could also have made the jail's administrative process unavailable, especially in the midst of his ongoing medical emergency. Physical incapacity can be a valid reason for a delay in filing a grievance, *see Hurst v. Hantke*, 634 F.3d 409, 411-12 (7th Cir. 2011); *McCoy v. Gilbert*, 270 F.3d 503, 510 (7th Cir. 2001), and when the need for assistance is urgent, an impediment to grieving can render the process entirely unavailable, *see Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173 (7th Cir. 2010). Accordingly, to the extent that Kincaid has acknowledged on appeal that he did not exhaust during the normal time frame, he has adequately alleged plausible excuses for his conduct to proceed on his complaint.

We recognize that a more complete examination of the facts may show that administrative remedies were in fact available to Kincaid and that his failure to exhaust is not excused. But those are details that should be developed in a factual record if the defendants raise exhaustion as a defense. *See Pavey*, 544 F.3d at 742-43. Accordingly, we VACATE and REMAND for further proceedings consistent with this decision.