FILED
United States Court of Appeals
Tenth Circuit

September 13, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ROBBIE BURKE, as personal
representative of the estate of John Patrick
Kaczynski,

     Plaintiff - Appellant,

v.

DANIEL HOLDMAN. M.D.,

     Defendant - Appellee.

No. 17-7060
(D.C. No. 6:14-CV-00450-JHP)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **EBEL**, and **EID**, Circuit Judges.
_____

Robbie Burke, as personal representative of John Kaczynski's estate (the
"Estate"), appeals from the district court's (A) dismissal of the Estate's medical
negligence claim against Dr. Daniel Holdman based on its determination that Dr.
Holdman is immune from tort liability under the Oklahoma Governmental Tort Claims
Act (the "OGTCA"), Okla. Stat. tit. 51, §§ 151-172; and (B) denial of the Estate's motion
for leave to amend the operative complaint.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Exercising jurisdiction under 28 U.S.C. § 1291,[1] we vacate the dismissal of the Estate's claim, affirm the denial of leave to amend, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Dr. Holdman treated Mr. Kaczynski, then a pretrial detainee in the custody of Oklahoma law enforcement agencies, at the Eastern Oklahoma Medical Center ("EOMC") shortly before Mr. Kaczynski's death. The Estate sued both EOMC and Dr. Holdman for medical negligence in the United States District Court for the Eastern District of Oklahoma.[2] We present the relevant chronology of this case in district court:

---

[1] Although the Estate voluntarily stipulated below to the dismissal of its claims against several other defendants without prejudice, the orders on appeal have ripened into final orders because the applicable Oklahoma statute of limitations and savings statute periods have since elapsed. *See Palka v. City of Chi.*, 662 F.3d 428, 433 (7th Cir. 2011) ("[W]hen an otherwise revivable claim cannot be refiled because the statute of limitations has run, its dismissal without prejudice does not preclude appellate jurisdiction over other claims that were dismissed on the merits."); *Fassett v. Delta Kappa Epsilon (N.Y.)*, 807 F.2d 1150, 1155 (3d Cir. 1986) ("In the present case, although all parties had stipulated to a dismissal without prejudice against [one of the defendants], the two-year Pennsylvania statute of limitations had already run as of the time of [that defendant]'s dismissal . . . . Because [the plaintiffs] retained no viable cause of action against [that defendant], we conclude that the dismissal, which was nominally without prejudice, was for our purposes, a final dismissal." (emphasis omitted)); *see also Hyatt v. Board of Regents*, 659 F. App'x 522, 524 (10th Cir. 2016) (cited for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1); *cf. Eastom v. City of Tulsa*, 783 F.3d 1181, 1185 (10th Cir. 2015) (holding that the order appealed from "remain[ed] non-final" because "Oklahoma law toll[ed] the savings statute" as to the plaintiff's claim—which was voluntarily dismissed without prejudice—against a different defendant in the case).

[2] In addition to its claims against EOMC and Dr. Holdman, the Estate brought federal and state claims against various county and municipal entities and employees that were eventually dismissed and are not relevant to this appeal.

**June 5, 2015**—the Estate filed the operative complaint's predecessor (the "June 5 Complaint"), which alleged that EOMC "was, at all times relevant hereto, a valid public trust created for the purpose of running [EOMC] through the Board of Trustees appointed by the LeFlore County Commissioners." Suppl. App. at 5. The June 5 Complaint also alleged that Dr. Holdman "was, at all relevant times, a healthcare provider licensed to practice medicine and employed by [EOMC] to deliver medical services in accordance with the appropriate standard of care to patients who present at [EOMC]." *Id.*

**July 2, 2015**—EOMC, in its answer, "specifically denie[d] Dr. Holdman was its agent, servant and/or employee or that it assigned Dr. Holdman to care for Mr. Kaczynski." Dist. Ct. Doc. 68 at 5.

**August 25, 2015**—Dr. Holdman, instead of filing an answer, moved to dismiss the June 5 Complaint under Federal Rule of Civil Procedure 12(b)(6). He asserted an affirmative defense—sovereign immunity under the OGTCA, Suppl. App. at 21, which provides, except where expressly waived, that "[t]he state, its political subdivisions, and all of their employees acting within the scope of their employment . . . shall be immune from liability for torts." Okla. Stat. tit. 51, § 152.1(A). He said that, "[w]hile he was not a traditional 'employee' of EOMC, he was, by definition, a state 'employee' when he cared for Kaczynski at EOMC on 3/13/2014." Suppl. App. at 27. He relied specifically on § 152(7)(b)(7) of the OGTCA, Suppl. App. at 27, which provides that "licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies" are "employees of th[e] state." Okla. Stat. tit. 51, § 152(7)(b)(7). He asserted

3

that he was a state employee under § 152(7)(b)(7) because he had "contracted to work in the emergency department at EOMC, which . . . is a political subdivision of the state" and because "Mr. Kaczynski . . . was still in custody on 3/13/2014." Suppl. App. at 28.

**September 8, 2015**—The Estate responded to Dr. Holdman's motion, arguing that "[t]he characterization and categorization of Dr. Holdman's status related to EOMC cannot be determined from the pleadings and should be subjected to further discovery." *Id.* at 33-34. It said that, "[a]lthough [Ms. Burke] did plead in the [June 5 Complaint] that Dr. Holdman was an employee of EOMC, [Ms. Burke] relied on what appeared from the medical records in her possession and would have no knowledge of the specific and private arrangement between Dr. Holdman and EOMC." *Id.* at 34. It contended that "[t]he contract that Dr. Holdman claims he has with EOMC is critical to a determination of the issue he submits to the Court," and that, "[a]s this is a Fed. R. Civ. P. 12(b)(6) motion to dismiss and not a Fed. R. Civ. P. 56 motion for summary judgment, . . . [t]his Court must respectfully rule on the pleading submitted by Dr. Holdman herein without reference to the claimed contract—of which no evidence is properly before the Court . . . —with EOMC." *Id.* at 34-35.

**September 21, 2015**—Dr. Holdman replied to the Estate's response, attaching two exhibits (the "Exhibits")—(1) an "Agreement for Emergency Medical Services" between EOMC and an entity called NES Oklahoma, Inc. ("NES"), and (2) a "Physician Agreement" between NES and Dr. Holdman. *Id.* at 45, 82. He argued that the Exhibits "may be considered by the Court in the context of a motion to dismiss" and established his immunity as a state employee under § 152(7)(b)(7) of the OGTCA. *Id.* at 39-41. He

4

also said that, "[a]lternatively, if the Court disregards the contracts and simply accepts the allegations in Plaintiff's Complaint as true, [he] still cannot be sued individually" as an employee of EOMC, a political subdivision "because . . . '[i]n no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as a defendant.'" *Id.* at 42-43 (quoting Okla. Stat. tit. 51, § 163(C)).

**March 4, 2016**—Additional discovery led the Estate to amend the June 5 Complaint, with the court's approval, to add several new defendants. The Estate's amended complaint (the "Operative Complaint") again alleged that, at all relevant times, EOMC was "a valid public trust" and Dr. Holdman was "employed by [EOMC] to deliver medical services . . . to patients who present at [EOMC]." App. at 76.

**March 11, 2016**—Based on the filing of the Operative Complaint, the district court issued a minute order finding that Dr. Holdman's motion to dismiss the June 5 Complaint was moot.

**March 16, 2016**—Dr. Holdman filed a new Rule 12(b)(6) motion to dismiss the Operative Complaint, again asserting immunity and attaching the Exhibits. He argued, based on the Exhibits, that "[b]ecause [he] is a licensed medical professional who provided care to a person in the custody of law enforcement at EOMC pursuant to contract, he is an 'employee' of the State as a matter of law [under § 152(7)(b)(7) of the OGTCA]." *Id.* at 12. He also said:

> If Dr. Holdman was an employee of EOMC when he cared for Mr. Kaczynski on 3/13/2014, then Plaintiff's claim against him is barred [because he is an employee of a political subdivision]. If, as was the case, Dr. Holdman was providing care to an inmate while under contract with . . . EOMC, . . .

5

the claim against him is barred [because he is an employee of the state]. Whether he was a traditional employee of EOMC, as Plaintiff alleges, or a provider of services at EOMC pursuant to contract, which was the case, [he] cannot be sued for 'Medical Negligence.'"

*Id.*

**March 28, 2016**—The Estate responded to Dr. Holdman's new motion, again "contend[ing] that the issue presented . . . cannot be adjudicated in a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss." *Id.* at 61. It also argued that even if the Court were to consider the Exhibits in the context of ruling on the Rule 12(b)(6) motion, the Exhibits did not show that Dr. Holdman qualifies as a state employee under § 152(7)(b)(7) of the OGTCA. *See id.* at 63-64.

**July 11, 2016**—The district court dismissed the Operative Complaint based on the Exhibits, concluding that Dr. Holdman is entitled to immunity as a state employee under § 152(7)(b)(7) of the OGTCA. *Burke v. Leflore Cty. Det. Ctr. Pub. Tr. Bd.*, No. 14-CV-00450-JHP, 2016 WL 3747595, at *3 (E.D. Okla. July 11, 2016).[3]

**August 8, 2016**—The Estate stipulated to the dismissal of all claims against EOMC with prejudice. It also moved for reconsideration and, in the alternative, for leave to amend the Operative Complaint to replace the allegation that Dr. Holdman was employed by EOMC with the allegation that Dr. Holdman "was an independent

---

[3] By this time, because all of the Estate's federal claims had been dismissed from the case, the district court was proceeding under supplemental jurisdiction. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III of the United States Constitution.").

6

contractor for NES, Inc." and that "NES, Inc. contracted with EOMC to provide emergency room physicians at the hospital." Dist. Ct. Doc. 158-1 at 6.

**September 12, 2016**—The district court issued a minute order denying the Estate's motion for reconsideration or leave to amend the Operative Complaint.

## II. DISCUSSION

The Estate appeals from the district court's (A) dismissal of the Estate's medical negligence claim against Dr. Holdman, and (B) denial of leave to amend the Operative Complaint. We first analyze the dismissal of the Estate's claim and determine that the district court erred in considering the Exhibits without converting Dr. Holdman's Rule 12(b)(6) motion into a motion for summary judgment. We therefore vacate the dismissal and remand for further proceedings consistent with this opinion. We then turn to the denial of leave to amend and affirm because the district court acted within its discretion in light of the proposed amendment's untimeliness.

### A. *Dismissal of the Estate's Medical Negligence Claim*

We vacate the district court's dismissal of the Estate's medical negligence claim against Dr. Holdman and remand for further proceedings consistent with this opinion. We begin with our standard of review, background on the conversion of Rule 12(b)(6) motions to Rule 56 motions, and background on the relevant provisions of the OGTCA. We then analyze the district court's ruling on Dr. Holdman's Rule 12(b)(6) motion and conclude that the court erred when it relied on the Exhibits and failed to convert the motion into one for summary judgment.

7

1. **Standard of Review and Rule 12(b)(6) Standards**

"We review a Rule 12(b)(6) dismissal de novo." *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014).[4]

2. **Rule 12(b)(6) to Rule 56 Conversion**

"A 12(b)(6) motion must be converted to a motion for summary judgment if 'matters outside the pleading are presented to and not excluded by the court' and 'all parties are given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.'" *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (alterations omitted) (quoting Fed. R. Civ. P. 12(b)). "The failure to convert a 12(b)(6) motion to one for summary judgment where a court does not exclude outside materials is reversible error unless the dismissal can be justified without considering the outside materials." *Id.*

"Notwithstanding these general principles, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Id.*; *see also Thomas*, 765 F.3d at 1197 ("A district court may consider documents (1) referenced in a complaint that are (2) central to a plaintiff's claims, and (3) indisputably authentic when resolving a motion to dismiss without converting the motion to one for summary

---

[4] Dr. Holdman contends that the applicable standard of review is abuse of discretion because Ms. Burke filed a motion for reconsideration, which the district court denied. But Ms. Burke appeals from the district court's grant of Dr. Holdman's motion to dismiss, not from the denial of her motion for reconsideration.

judgment.").  "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied."  *GFF Corp.*, 130 F.3d at 1384.

"There is considerable authority to the effect that the conversion provision applies to affirmative defenses raised on a Rule 12(b)(6) motion."  5C Charles Alan Wright et al., *Federal Practice and Procedure* § 1366 (3d ed., Apr. 2018 update) ("Wright & Miller").  "As a result, when a defendant's motion to dismiss raises an *affirmative defense that is not apparent on the face of the pleading and outside matter is presented and accepted*, federal courts generally will treat the motion as if it were one for summary judgment."  *Id.* (emphasis added); *see, e.g.*, *Parkinson v. California Co.*, 233 F.2d 432, 438 (10th Cir. 1956) ("[U]nder Federal Rules of Civil Procedure, rule 12(b)(6), when the Court does not exclude [materials outside of the complaint], a motion to dismiss [presenting an affirmative defense based on the outside materials] is to be treated as one for summary judgment.").

3.  **Relevant Provisions of the OGTCA**

The OGTCA, Okla. Stat. tit. 51, §§ 151-172, codifies the doctrine of sovereign immunity and delimits the state's waiver of its immunity.  Under the OGTCA, the following entities and individuals qualify for immunity from tort liability:  "[t]he *state*, its *political subdivisions*, and *all of their employees* acting within the scope of their employment, whether performing governmental or proprietary functions."  *Id.* § 152.1(A) (emphasis added).  The OGTCA expressly "waives [the state's] immunity and that of its

9

political subdivisions," but "only to the extent and in the manner provided in this act." *Id.* § 152.1(B).

Notably, even where the OGTCA waives sovereign immunity, thus authorizing suits against "the *state* or a *political subdivision* . . . for loss resulting from its torts or the torts of its employees acting within the scope of their employment," plaintiffs may nevertheless not name "an *employee* of the state or of a political subdivision of the state acting within the scope of employment . . . as defendant" in such suits. *Id.* § 153(A), (C) (emphasis added); *see also id.* § 163(C).

We provide the statutory definitions for the terms "state," "political subdivision," and "employee" appearing in the above provisions.

a. *State*

The OGTCA defines "state" as "the State of Oklahoma or any office, department, agency, authority, commission, board, institution, hospital, college, university, public trust . . . of which the State of Oklahoma is the beneficiary, or other instrumentality thereof." *Id.* § 152(13).

b. *Political subdivision*

The OGTCA's definition of "political subdivision" includes, among other things, "a public trust," including a county hospital "that is operated for the public benefit by a public trust . . . and managed by a governing board appointed or elected by the . . . county, . . . who exercises control of the hospital, subject to the approval of the governing body of the . . . county." *Id.* § 152(11)(d)(1).

c. *Employee*

The OGTCA defines "employee" as "any person who is authorized to act in behalf of a political subdivision or the state whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time or part-time basis." *Id.* § 152(7). The statute also provides:

> For the purpose of The Governmental Tort Claims Act, *the following are employees of this state*, regardless of the place in this state where duties as employees are performed:
>
> . . . .
>
> > (7) licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies, . . . .

*Id.* § 152(7)(b) (emphasis added).

4. **Analysis**

The district court granted Dr. Holdman's Rule 12(b)(6) motion to dismiss because, based on the Exhibits, it determined that he is entitled to immunity as an "employee[] of th[e] state" under § 152(7)(b)(7) of the OGTCA. Over the Estate's objection, the court considered the Exhibits without converting Dr. Holdman's motion into one for summary judgment. It determined that the Exhibits were "referenced in the [Operative] Complaint and central to Plaintiff's claims," because "Plaintiff's [Operative] Complaint raises the issue of Dr. Holdman's employment relationship with EOMC," and that "[the Exhibits'] authenticity is undisputed." App. at 5.

11

We vacate the dismissal of the Estate's claim and remand for further proceedings because the district court erred by failing to convert Dr. Holdman's motion into one for summary judgment.[5]  Contrary to the district court's determination, the Operative

[5] In the district court and on appeal, Dr. Holdman has primarily argued that the Exhibits show he is "under contract with" EOMC and therefore immune from suit as an employee of the "state" under § 152(7)(b)(7) of the OGTCA.  *See* App. at 12; Suppl. App. at 42-43; Aplee. Br. at 18.  But he also has suggested that the Operative Complaint's allegations, if true, would establish his immunity from suit as an employee of a "political subdivision" (EOMC) under § 153(C) of the OGTCA.  *See* App. at 12; Suppl. App. at 42-43; Aplee. Br. 23; *but see* App. at 10 (arguing in motion to dismiss the Operative Complaint that, "[b]ased on the Plaintiffs *allegations*, Dr. Holdman was a *State* 'employee' under the [OGTCA]" (emphasis added)).

Read generously, Dr. Holdman's briefing presents an alternative basis for dismissing the Estate's claim—that his immunity as a "political subdivision" employee appears on the face of the Operative Complaint.  *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).  The district court did not rely on this alternative argument in granting Dr. Holdman's motion to dismiss and instead determined from the Exhibits that Dr. Holdman is a "state" employee.

Even assuming Dr. Holdman has adequately briefed this alternative ground for affirming, we decline to exercise our discretion to address it for two reasons:  (1) Dr. Holdman's immunity is not entirely apparent from the Operative Complaint's allegations, and (2) critical arguments have not been developed by the parties on appeal.  *See Walton v. Powell*, 821 F.3d 1204, 1212 (10th Cir. 2016) ("To prevent cases from needlessly bouncing back and forth between district and appellate courts, this court is entitled to affirm a district court on alternative grounds that court didn't consider if those grounds are adequate, apparent in the record, and sufficiently illuminated by counsel on appeal.").

First, the Operative Complaint does not allege specific facts to support its somewhat conclusory allegation that EOMC "employed" Dr. Holdman.  *See Fernandez*, 883 F.3d at 1299 ("[I]t is proper to dismiss a claim on the pleadings based on an affirmative defense . . . only when the complaint itself admits all the elements of the affirmative defense *by alleging the factual basis for those elements*." (emphasis added)).

Second, neither party has briefed the alternative ground either below or on appeal, apart from Dr. Holdman's cursory references to the Operative Complaint's allegation that he was "employed" by EOMC.  *See United States v. Damato*, 672 F.3d 832, 844 (10th Cir. 2012) ("We have identified several guiding factors in determining whether to consider an alternative theory[,] [including] whether the ground was fully briefed and argued here and below.").  Indeed, even when Dr. Holdman did reference this allegation in his motion to dismiss the Operative Complaint, he did so to support his state employee

Complaint nowhere references contracts between Dr. Holdman and EOMC, Dr. Holdman and NES, or NES and EOMC. Indeed, the Operative Complaint nowhere references NES, a party to both the contracts included in the Exhibits. Nor are the Exhibits central to the Estate's medical negligence claim against Dr. Holdman. Rather, the Exhibits—and Dr. Holdman's relationship to EOMC—are central to Dr. Holdman's affirmative defense of immunity under the OGTCA.

In sum, Dr. Holdman's affirmative defense of immunity as a state employee under § 152(7)(b)(7) of the OGTCA does not appear on the face of the Operative Complaint but instead requires recourse at least to the Exhibits, and the district court's dismissal of the Estate's claim based on this defense—without converting to summary judgment—constituted reversible error. *See GFF Corp.*, 130 F.3d at 1384; Wright & Miller § 1366; *see also Parkinson v. California Co.*, 233 F.2d 432, 438 (10th Cir. 1956).[6]

---

theory of immunity, which requires that he was under contract with rather than employed by EOMC. App. at 10.

Reinforcing both reasons for declining to address the alternative ground is the OGTCA's exclusion of "independent contractor[s]" from its definition of "employee." Okla. Stat. tit. 51, § 152(7)(a)(1). Questions about the scope of this exclusion and its application to Dr. Holdman, combined with the conclusory nature of the Estate's allegations and the absence of full briefing, limit our ability to assess whether Dr. Holdman's immunity as an "employee" of a "political subdivision" appears on the Operative Complaint's face.

[6] Although we may "review the District Court's dismissal as a grant of summary judgment," *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 714 (10th Cir. 2005), we decline to do so here. The record on appeal is incomplete, and we cannot rule out the existence of a genuine issue of fact material as to Dr. Holdman's status as a state employee under § 152(7)(b)(7) of the OGTCA.

First, the Exhibits do not show on their face that, at the relevant time, EOMC had approved Dr. Holdman to provide services in its Emergency Department, *see* App. at 46, and the parties have not stipulated to this fact. Second, the Estate's appellate brief refers

## B. *Denial of Leave to Amend the Operative Complaint*

We affirm the district court's denial of leave to amend the Operative Complaint. We begin with our standard of review and applicable legal standards. We then analyze whether the district court erred in denying leave to amend and conclude that the court acted within its discretion in light of the proposed amendment's untimeliness.

### 1. Standard of Review

We "review for abuse of discretion the district court's denial of Plaintiff's motion to file an amended complaint." *Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010).

### 2. Rule 15(a)(2) Standards

Under Federal Rule of Civil Procedure 15(a)(2), "[t]he [district] court should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P.

---

to relevant deposition testimony—which appears nowhere in the appendices filed by the parties on appeal—from Dr. Holdman on his relationship with EOMC. Aplt. Br. at 7-8. Third, depending on how § 152(7)(a)(1) (which excludes "independent contractor[s]" from the definition of "employee") should be reconciled with § 152(7)(b)(7) (which defines "employee[] of th[e] state" to include "licensed medical professionals under contract with city, county, or state entities" who treat inmates or detainees)—a question we leave to the district court in the first instance—Dr. Holdman may need to show that he is not an "independent contractor," a potentially fact-intensive inquiry, to have immunity under the OGTCA.

Based on the foregoing considerations, we decline to review the dismissal of the Estate's complaint as a matter of summary judgment and instead remand to the district court for further proceedings. In doing so, we take no position on the court's conclusion that Dr. Holdman's contract with NES and NES's contract with EOMC render Dr. Holdman "under contract with" EOMC under § 152(7)(b)(7) of the OGTCA.

15(a)(2).[7] "[T]hus district courts may withhold leave to amend only for reasons such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Cohen*, 621 F.3d at 1313 (quotations omitted). This court "ha[s] often found untimeliness alone a sufficient reason to deny leave to amend." *Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir. 2001) (quotations omitted).

3. **Analysis**

Because the Estate's proposed amendment was untimely, the district court acted within its discretion in denying leave to amend the Operative Complaint. The Estate filed the June 5 Complaint on June 5, 2015. It was on notice of Dr. Holdman's immunity defense under the OGTCA no later than August 25, 2015, when he filed his motion to dismiss the June 5 Complaint. And on September 21, 2015, Dr. Holdman filed the Exhibits, on which the Estate later based the proposed amended complaint's allegation that Dr. Holdman was an independent contractor and not EOMC's employee.

But the Estate nevertheless failed to include the proposed amendments in the Operative Complaint, which it filed on March 4, 2016. Indeed, the Estate did not seek leave to make the proposed amendment until August 8, 2016, the same day on which the Estate stipulated to the dismissal of its claims against EOMC and almost a full year after

---

[7] Rule 15(a)(1), which sets forth the circumstances under which a party may amend its pleading as a matter of course, is not applicable to the facts of this case. Outside of those specified circumstances, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

15

the Estate was first put on notice of Dr. Holdman's immunity defense. Nor has the Estate offered an adequate justification for its failure to amend at an earlier date.[8] Under these circumstances, it was within the district court's discretion to deny leave to amend. *See Hayes*, 264 F.3d at 1026 ("[W]e have often found untimeliness alone a sufficient reason to deny leave to amend." (quotations omitted)).

## III. **CONCLUSION**

For the foregoing reasons, we vacate the district court's dismissal of the medical negligence claim, affirm its denial of leave to amend, and remand for further proceedings consistent with this opinion.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[8] At oral argument, counsel for the Estate conceded that the Estate "had received the brief from Dr. Holdman at the time" and "should have made the amendment . . . and there's not a justification other than it was forgotten at the moment due to adding new defendants under the terms of the statute of limitations, which was the primary concern with the [Operative Complaint]." Oral Argument at 13:01-13:24. Nor does the Estate's ongoing claim against EOMC, which depended on Dr. Holdman's status as an EOMC employee, justify the Estate's delay in seeking leave to amend the allegations pertaining to Dr. Holdman's relationship with EOMC. The Estate could have pled at any point in the litigation that Dr. Holdman was an employee of EOMC for purposes of its claim against EOMC and, separately, that Dr. Holdman was not an employee of EOMC for purposes of its claim against him individually. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").